UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

TOP SHELV WORLDWIDE, LLC,　　　　　　　Case No. 17-21434-dob
　　　　Debtor.　　　　　　　　　　　　　　　Chapter 11 Proceeding
　　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/

OPINION REGARDING APPLICATION FOR
COMPENSATION OF GUDEMAN AND ASSOCIATES, P.C.

Counsel for the Debtor filed an Application for Compensation requesting compensation of $111,170.00 and expenses of $1,928.07 for services incurred from November 15, 2017 through July 27, 2018 ("Application"). Creditors, Four Courts, Inc., Farley Manufacturing, Inc., and Anthony Gushow & Sons, Inc., object to this Application. The Court heard oral arguments regarding counsel's Application on September 17, 2018 and after careful consideration of the pleadings and arguments of counsel, concludes that Debtor's counsel should be awarded a portion of the fees requested, but that the remaining fees requested should not be approved at this time for the reasons stated in this Opinion.

Findings of Fact

A. Pre-2017 Bankruptcy Events

The Debtor's consolidated operations include the ownership and operation of a sports dome facility in Auburn, Michigan. The Debtor had significant construction issues regarding the sports dome and incurred significant cost overruns and delays which put the Debtor over budget and behind schedule. The Debtor could not overcome these significant obstacles and filed a Chapter 11 Bankruptcy Petition with this Court on August 31, 2015. Through extensive negotiations with its

1

creditors, namely a series of mortgage holders and construction lien claimants, the Debtor emerged from its first Chapter 11 proceeding with a consensual Chapter 11 Plan that promised to pay all of its secured creditors in full over the course of many years. Unfortunately for all, the Debtor was unable to make payments to its creditors per its confirmed Chapter 11 Plan. As allowed under that Plan, one creditor, Four Courts/Farley Manufacturing, sent a Notice of Default which triggered certain remedies to all of the secured creditors of the Debtor. These remedies included the surrender of the facility to the creditors, a result that the Debtor wished to avoid, so the Debtor filed this Chapter 11 proceeding on July 14, 2017.

B. <u>Early Phases of Current Chapter 11 Proceeding</u>

The Debtor did not get its hoped for breathing spell in that Four Courts/Farley Manufacturing filed a Motion to Dismiss on July 25, 2017, and many secured creditors joined that Motion. The Debtor responded to this Motion and the Court held a series of hearings to determine if the Motion to Dismiss should be granted. As part of these hearings and conferences resulting from the Motion to Dismiss, the Debtor shared its general approach to reorganization in this case by arguing that the current value of the Debtor's assets were much less than the $2,713,307 listed by the Debtor in its first bankruptcy and that the Debtor could earn sufficient income to pay its secured creditors, as their interest appeared, with a reduced value. The Court denied the Motion to Dismiss, but placed certain conditions upon the Debtor to report income, develop a capital contribution plan for the Debtor's insiders, and to otherwise pay property taxes and insurance to protect the Debtor and creditors alike. By the time the September 28, 2017 Order Denying the Motion to Dismiss was entered, all parties had an inkling that the Debtor would argue that the value of its assets were significantly less than as agreed to in the previous Chapter 11 Plan, but that the Debtor would pay its creditors that value,

as well as address any other objections that can be raised by creditors such as the absolute priority rule with its corresponding payment of new value and any election made by any creditor under Section 1111(b) of the Bankruptcy Code.

C. Valuation of Debtor's Assets

As forecast, the Debtor hired an appraiser to value its assets, but was handcuffed because the appraiser could not timely perform the appraisal. Over concerns raised by the creditors, the Court allowed the Debtor additional time to give Debtor's appraiser the opportunity to prepare a report, which he ultimately did. This report, which detailed three classic approaches to appraising assets such as that of the Debtor, utilized the replacement cost, sales comparison, and income approaches and pegged the Debtor's assets at $1,342,000, $1,155,000, and $300,000 under each approach respectively.[1] Although the Debtor's appraiser indicated that the sales comparison approach was the better approach, that the replacement cost and sales comparison approaches had more factual support and that the data was lacking to support the income approach, the Debtor and its counsel chose the income approach and subsequently engaged in a highly contested series of hearings in an effort to convince the Court that the Debtor's assets were worth $300,000. The secured creditors objected strenuously to the Debtor's valuation and this Court ultimately concluded that the value of the Debtor's assets was $1,100,000 as opined by the Court on February 21, 2018 and reduced in writing pursuant to a May 10, 2018 Order of this Court by stipulation of the parties.

D. Debtor's Transitional Period

After the Debtor survived the Motion to Dismiss and retained an appraiser, the Debtor

---

[1] These values assumed an extended time to market the assets. Using a forced liquidation timetable that is much shorter, the values drop to $805,000, $685,000, and $180,000 respectively.

initiated a series of innovative programs to raise additional income. The Debtor also began investigation of the various claims made by the secured creditors, as well as prepare a Chapter 11 Plan. Unrelated to the Debtor's operations, but relevant to this Opinion, however, counsel for the Debtor filed an Interim Application for Compensation seeking $66,855.00 in fees and $4,043.28 in expenses. Four Courts/Farley Manufacturing objected to this Application as did Gushow and Valley Electrical Contractors, Inc. Prior to the Court holding a hearing on the Debtor's Application, however, the parties entered into a stipulation that awarded $56,700.00 in fees and $4,043.28 in expenses, with an additional provision that only $48,717.00 of this amount would be paid. The remaining $13,743.28 was not to be paid until confirmation of the Debtor's Chapter 11 Plan or further order of the Court.

    E. <u>Debtor's Chapter 11 Plan and Adversary Proceeding</u>

The Debtor filed a Combined Plan of Reorganization and Disclosure Statement with this Court, but also instituted an adversary proceeding against all of its secured creditors claiming that various creditors enjoyed a higher priority than other creditors, all in contradiction of the Debtor's confirmed Chapter 11 Plan in the previous case. As a result, confirmation of the Debtor's Chapter 11 Plan was stalled as secured creditors addressed various issues raised by the Debtor. Many creditors brought their own summary judgment motions as to their various claims. One creditor, Gushow, filed a Motion for Summary Judgment, which this Court granted, holding in part that the terms of the Debtor's confirmed Chapter 11 Plan in the previous case were binding upon the Debtor and Gushow and prohibited the Debtor from relitigating the issues raised in the adversary proceeding. Other Defendants in the adversary proceeding enjoyed similar rights, but an issue was raised as to Four Courts/Farley Manufacturing as to whether those creditors enjoyed greater rights

because additional information was made known through the adversary proceeding. The adversary proceeding is currently going through the discovery stage and has stalled the issue of confirmation.

F. <u>Debtor's Counsel's Instant Application for Compensation</u>

In the Application filed by Debtor's counsel, fees of $111,170.00 are requested, as well as expenses of $1,928.07. Counsel correctly reports that $12,256.72 remains of the retainer held by Debtor's counsel and seeks not only approval of the fees and expenses, but the right to withdraw this retainer to pay a portion of the fees and expenses owed to it. Debtor's counsel followed the project category format, so the fees requested are reported as:

| Category | Hours | Dollars Sought |
|---|---|---|
| Case Administration | 266.80 | $73,395.00 |
| Chapter 11 Plan | 59.90 | $20,460.00 |
| Adversary Proceeding | 53.10 | $16,315.00 |
| Fee Application Preparation | 10.00 | $ 1,000.00 |

For the most part, the services described in each category are correctly labeled, but in some instances, entries in the case administration category are more properly characterized as adversary proceeding services.[2]

Four Courts/Farley Manufacturing and Gushow objected to the Debtor's Application, primarily arguing that 11 U.S.C. § 330 prohibits counsel from receiving this amount of fees because the services rendered do not benefit the estate. In support of their assertion, these creditors point to the challenges facing the Debtor to confirm a Chapter 11 Plan, including the requirement to pay $1,100,000 to secured creditors, the lack of income of the Debtor to make these payments, the

---

[2] For example, case administration services on 06/16/18, 06/27/18, 06/28/18, and 07/05/18 refer to a motion for summary judgment in the adversary proceeding. More entries are described later in this Opinion, which, for the sake of brevity, appear only once in this Opinion.

5

challenges of the absolute priority rule prohibiting Debtor's members from retaining their unit interest unless significant new value is paid, and the possible significant Section 1111(b) elections made by various secured creditors.

Debtor's counsel replies by arguing that all services were necessary and that this case has grown because of the myriad of issues raised by various parties. While the Debtor has earned over $100,000.00 in net income over the course of the last year, the objecting creditors reply that real property taxes of approximately $42,000.00 have not been paid and that an insider of the Debtor, Mr. Delaney, has received at least $26,000.00 in compensation while they have not received any money.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Analysis

Debtor's counsel has supplied an extensive, more than 30-page statement of work performed, which was further broken down by project categories. No creditor claims that the hourly rate charged by Debtor's counsel is unreasonable or that Debtor's counsel did not work hard on behalf of its client. What each creditor does argue, however, is that the value of Debtor's counsel's services to the Debtor's estate is not worth the $111,170.00 requested, especially in light of the additional fees previously approved by this Court. In support of their argument, creditors do not point to any particular line item as being excessive, but instead argue that the value of the services rendered to date do not justify an award of the fees requested.

In support of their position, the creditors cite *In re Williams*, 378 B.R. 811 (Bankr. E.D.

Mich. 2007) to support their argument that attorney fees should not be awarded when it should be apparent that reorganization of the Debtor is beyond hope. The creditors essentially argue that Debtor's counsel should by now realize that reorganization along the lines that the Debtor wishes to take is not possible and that Debtor's counsel should necessarily rein in their services to fit the landscape currently in place.

This Court distinguishes *Williams* in that *Williams* involved a Chapter 13 debtor who had her Chapter 13 plan confirmed, but with the knowledge of all that the funding of her plan was very tight and that the failure to make a payment would be catastrophic. The debtor did fail to make a payment, which prompted two creditors to file motions to lift the stay, which debtor's counsel valiantly defended, but failed. Subsequently, after requesting additional fees, the *Williams* court denied the fees in part and concluded that debtor's counsel should have known much earlier in the case that the debtor would not have a viable Chapter 13 plan and should have taken other alternative means to protect the debtor.

While *Williams* involved a Chapter 13 case in a post-confirmation setting and is therefore distinguishable, the basic lessons of *Williams* are instructive. As argued by the creditors, it is the Debtor, and presumably by proxy, Debtor's counsel, who has escalated this case way beyond its normal and expected scope. Per the creditors' arguments, while this Court perhaps incorrectly denied their Motion to Dismiss, a very clear, but narrow path of reorganization is available to the Debtor: Determine the value of the Debtor's assets, propose a plan to pay that value to secured creditors, prepare for a brief battle over the amount of the new value under the absolute priority rule, and then have a Chapter 11 Plan confirmed. In this scenario, Debtor's counsel's attorney fees would be a fraction of the amount already approved and much less than the amount requested currently. The Debtor does raise good responses in that the Section 1111(b) election of various creditors could

7

prove problematic in that the Section 1111(b) election can only be made by a secured creditor. As Debtor's counsel posits, if Four Courts/Farley Manufacturing's claim is not secured, then the Section 1111(b) election is of no avail and the Debtor can pay the $1,100,000 to the remaining secured creditors. And Debtor has some support for that result with its creditors in that certain creditors have indeed indicated that they would approve and consent to such a plan.

The objecting creditors also argue, however, that some of the fees involved in the instant Application include the Debtor's attorney's efforts to essentially impeach their own appraiser by trying to advance the lesser value by utilizing the income approach even though their own appraiser did not view that value as being a reasonable method to approach the Debtor's assets. While the creditors make this argument, they cannot point to any set of entries that supports their argument, but beseech this Court to undertake that analysis on its own and make a determination. In doing so, this Court notes the following entries that support the creditors' objections:

| Date | Person | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 1/8/2018 | EJG<br>b. CHAPTER 11 PLAN<br>Preparation for oral argument. | 350.00 | 0.20 | 70.00 | Billable[3] |
| 1/9/2018 | EJG<br>b. CHAPTER 11 PLAN<br>Telephone conference with client, Oral argument re: valuation. | 350.00 | 2.70 | 945.00 | Billable |
| 11/20/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Begin drafting motion for valuation. | 300.00 | 0.40 | 120.00 | Billable |
| 11/21/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Work on drafting motion to value | 300.00 | 0.80 | 240.00 | Billable |

---

[3] The Court states the entries as each appears in the fee application. Since Debtor's counsel has used project categories, some entries are not in chronological order.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 11/22/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Work on motion to value. | 300.00 | 1.50 | 450.00 | Billable |
| 12/1/2017 | EJG<br>a. CASE ADMINISTRATION<br>review of draft of motion for valuation of assets, Telephone call to Stan D. re: same. | 350.00 | 0.40 | 140.00 | Billable |
| 12/1/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Continue legal research on valuation issues for motion to value facility. Finish draft motion to value. | 300.00 | 5.00 | 1,500.00 | Billable |
| 12/21/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Draft email to David Rexroth and Stan re motion to value. | 300.00 | 0.20 | 60.00 | Billable |
| 12/21/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Email exchange with David Rexroth re subpoena, motion to value, meeting for hearing prep. | 300.00 | 0.30 | 90.00 | Billable |
| 12/27/2017 | EJG<br>a. CASE ADMINISTRATION<br>Review of appraisal in preparation for meeting with appraiser Rex Roth. | 350.00 | 1.50 | 525.00 | Billable |
| 12/27/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Review appraisal and Appraisal Institute book and other materials for developing questions to ask David Rexroth. | 300.00 | 4.00 | 1,200.00 | Billable |
| 12/28/2017 | EJG<br>a. CASE ADMINISTRATION<br>Meeting with appraiser Rex Roth, preparatory for hearing on January 5th. | 350.00 | 1.50 | 525.00 | Billable |
| 12/28/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Continue reviewing appraisal and developing questions for hearing. | 300.00 | 3.00 | 900.00 | Billable |
| 12/28/2017 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Meet with David Rexroth and Stan Dulaney. Review appraisal with Rexroth. | 300.00 | 3.00 | 900.00 | Billable |
| 1/3/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION | 300.00 | 4.00 | 1,200.00 | Billable |

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 1/4/2018 | Kelly Darr<br>a. CASE ADMINISTRATION<br>Develop questions for hearing.<br>Prepared books for tomorrow's hearing | 100.00 | 2.00 | 200.00 | Billable |
| 1/4/2018 | Tanner, Rachel<br>a. CASE ADMINISTRATION<br>Helped BAR and KD prepare exhibit books for hearing tomorrow | 100.00 | 0.80 | 80.00 | Billable |
| 1/4/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Prepare for hearing, review treatises on appraisal, continue preparing questions for evidentiary hearing. | 300.00 | 5.00 | 1,500.00 | Billable |
| 1/5/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Drive to court, attend hearing on valuation, return drive to office. | 300.00 | 10.00 | 3,000.00 | Billable |
| 1/5/2018 | EJG<br>a. CASE ADMINISTRATION<br>Attend hearing on motion to value., Telephone conferences with David Rexroth re: same, travel to and from. | 350.00 | 9.50 | 3,325.00 | Billable |
| 1/8/2018 | EJG<br>a. CASE ADMINISTRATION<br>Telephone conference with Rexroth, Prep for Summation on Value. | 350.00 | 2.50 | 875.00 | Billable |
| 1/9/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Review and revise closing remarks prepared by EG. | 300.00 | 1.30 | 390.00 | Billable |
| 1/9/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Conference call on closing remarks in motion to value hearing. | 300.00 | 2.50 | 750.00 | Billable |
| 1/9/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Call with Stan Dulaney re construction lien issues, discuss valuation hearing. | 300.00 | 0.30 | 90.00 | Billable |
| 1/12/2018 | Rookard, Brian<br>a. CASE ADMINISTRATION<br>Attend bench opinion hearing on motion to value. | 300.00 | 1.50 | 450.00 | Billable |

The Court also notes that some of the adversary proceeding services were reported as case administration expenses. The following entries should be categorized as services related to the adversary proceeding:

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 1/8/2018 | Rookard, Brian | 300.00 | 0.50 | 150.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Do legal research on timing issues of construction lien. | | | | |
| 1/9/2018 | Rookard, Brian | 300.00 | 0.30 | 90.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Discuss with EG re construction lien issues. | | | | |
| 1/20/2018 | Rookard, Brian | 300.00 | 5.00 | 1,500.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Begin doing legal research and drafting of complaint for priority and other issues. | | | | |
| 1/21/2018 | Rookard, Brian | 300.00 | 8.00 | 2,400.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Continue doing legal research on various issues in complaint to determine priority and object to claims. Draft complaint. | | | | |
| 1/22/2018 | Rookard, Brian | 300.00 | 0.40 | 120.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Phone call with Stan Dulaney re various issues for new complaint to file, tax issues, and management of facility. | | | | |
| 1/27/2018 | Rookard, Brian | 300.00 | 6.00 | 1,800.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Finish drafting complaint, do additional legal research on Four Courts addition to proof of claim and other topics. | | | | |
| 1/30/2018 | Rookard, Brian | 300.00 | 1.40 | 420.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Work on service issues for service on Four Courts/Farley Manufacturing. Draft Certificate of Service. Then, John Lange emails saying he will accept for Four Courts/Farley Manufacturing. | | | | |
| 3/6/2018 | Rookard, Brian | 300.00 | 2.00 | 600.00 | Billable |
| | a. CASE ADMINISTRATION | | | | |
| | Work on drafting response to motion for summary judgment for Four Courts. | | | | |
| 3/11/2018 | Rookard, Brian | 300.00 | 1.50 | 450.00 | Billable |

          a. CASE ADMINISTRATION
          Work on legal issues for Gushow motion for summary judgment.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 3/11/2018 | Rookard, Brian | 300.00 | 7.50 | 2,250.00 | Billable |

a. CASE ADMINISTRATION
Work on drafting response to motion for summary judgment. A lot of legal research into various issues. Go back over prior case and documents filed there.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 3/17/2018 | Rookard, Brian | 300.00 | 9.00 | 2,700.00 | Billable |

a. CASE ADMINISTRATION
Work on response to motion for summary judgment of Four Courts - lengthy time for going over facts, and working on legal argument.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 3/18/2018 | Rookard, Brian | 300.00 | 5.50 | 1,650.00 | Billable |

a. CASE ADMINISTRATION
Work on introduction and facts section for response to motion for summary judgment of Gushow

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 3/21/2018 | Rookard, Brian | 300.00 | 2.50 | 750.00 | Billable |

a. CASE ADMINISTRATION
Work on drafting Gushow motion for summary judgment.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 3/22/2018 | Rookard, Brian | 300.00 | 3.00 | 900.00 | Billable |

a. CASE ADMINISTRATION
Work on drafting responses to motions for summary, work on affidavit.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 3/23/2018 | Rookard, Brian | 300.00 | 6.30 | 1,890.00 | Billable |

a. CASE ADMINISTRATION
Finish responses to motions for summary judgment, finish affidavit, calls to Stan re affidavit, assemble exhibits and file with court.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 4/3/2018 | Rookard, Brian | 300.00 | 1.30 | 390.00 | Billable |

a. CASE ADMINISTRATION
Draft motion to amend complaint.

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 4/6/2018 | EJG | 350.00 | 0.10 | 35.00 | Billable |

a. CASE ADMINISTRATION
Email exchange with creditor attorney re amended complaint attachment

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 4/9/2018 | EJG | 350.00 | 0.10 | 35.00 | Billable |

a. CASE ADMINISTRATION
Email from creditor attorney re proposed amended complaint

| Date | Name | Rate | Hours | Amount | Status |
|---|---|---|---|---|---|
| 4/12/2018 | Rookard, Brian | 300.00 | 1.80 | 540.00 | Billable |

a. CASE ADMINISTRATION

|            |                  |        |      |          |         |
|------------|------------------|--------|------|----------|---------|
|            | Work on drafting amended complaint | | | | |
| 4/12/2018  | EJG              | 350.00 | 0.10 | 35.00    | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Email from creditor attorneys re proposed amended complaint | | | | |
| 5/10/2018  | Rookard, Brian   | 300.00 | 0.80 | 240.00   | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Conference call re adversary proceeding. | | | | |
| 5/25/2018  | Rookard, Brian   | 300.00 | 0.10 | 30.00    | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Review and respond to email from Lauderbach office re word version of amended complaint | | | | |
| 6/4/2018   | Kelly Darr       | 100.00 | 0.20 | 20.00    | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Reviewed motion for summary judgment | | | | |
| 6/6/2018   | Rookard, Brian   | 300.00 | 1.50 | 450.00   | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Begin drafting response to motion for summary | | | | |
| 6/11/2018  | Kelly Darr       | 100.00 | 0.10 | 10.00    | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Reviewed response for Motion for Summary Disposition | | | | |
| 6/16/2018  | Rookard, Brian   | 300.00 | 2.80 | 840.00   | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Work on drafting response to motion for summary judgment | | | | |
| 6/27/2018  | Kelly Darr       | 100.00 | 0.60 | 60.00    | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Prepared file for tomorrow's hearing for motion for summary judgment. | | | | |
| 6/28/2018  | Rookard, Brian   | 300.00 | 4.00 | 1,200.00 | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Drive to court, attend hearing on motion for summary judgment, return drive to office. | | | | |
| 7/5/2018   | Rookard, Brian   | 300.00 | 0.80 | 240.00   | Billable |
|            | a. CASE ADMINISTRATION | | | | |
|            | Review response of Sugar Construction to additional case law cited by Four Courts. Review additional case law and begin drafting supplemental response. | | | | |

After analyzing these entries, Debtor's counsel is certainly entitled to payment of some of the

attorney fees because their efforts have taken the Debtor this far and perhaps to the brink of

confirmation of a Chapter 11 Plan. In this regard, the Court concludes that of the fees requested, Debtor's counsel should be compensated for the efforts of drafting the Chapter 11 Plan, portions of the valuation hearing that ultimately arrived at a $1,100,000 valuation, as opposed to the $2,713,307 in the Debtor's previous Chapter 11, as well as certain negotiation sessions and conferences with creditor's counsel. The Court now turns to application of this format.

Starting with the Chapter 11 Plan category, the January 8 and 9 entries of $70 and $945 are not allowed because each entry described services for valuation. The remaining entries are allowed in the amount of $19,445.00 ($20,460.00 - $1,015.00 = $19,445.00). The Court defers any award for the adversary proceedings, so $16,315.00 is reserved for a later determination. Of the case administration services, $18,510.00 is attributed to Debtor's efforts to convince the Court that its assets were worth $300,000.00 when its appraiser reported a much higher value. While the Court allows some fees for the valuation hearing because value was an open issue, the Court will only allow and award 10 hours at $350.00, or $3,500.00, because a reasonable approach to value would have reduced the effort devoted to a valuation hearing. The remaining $15,010.00 is disallowed ($18,510.00 - $3,500.00 = $15,010.00).

After deducting $21,795 for the case administration entries, which the Court defers as adversary proceeding services, the Court awards $7,000.00 because 20 hours of time was proper at this time given the circumstances of the Debtor's plight. The remainder will likewise be reserved for later consideration.

Of the remaining fees requested, the Court is not currently in a position to either award or deny these fees. For example, if the Debtor is successful in the adversary proceeding as to Four Courts/Farley Manufacturing, and can defeat any Section 1111(b) election by those creditors, then the Debtor has a much easier path to confirmation. That said, the financial performance of the Debtor, as it currently stands, causes questions to be raised as to the feasibility of the Debtor's Plan. For

example, while the Debtor has significantly improved operations and has increased income, property taxes still remain unpaid and Mr. Delaney has received approximately $26,000.00 for his Herculean efforts to date. Second, while the Debtor has in place a mechanism to determine new value for purposes of the absolute priority rule, there is nothing before the Court today to comfort the Court that this amount can or will be paid by anyone associated with the Debtor. That being said, the Court has not asked for such confirmation either.

Following a practice used by the parties previously, the Court awards $29,945.00, disallows $16,025.00, but holds the remainder in abeyance until this Court either confirms a Chapter 11 Plan or until further order of the Court.

**Signed on October 29, 2018**

/s/ Daniel S. Opperman
**Daniel S. Opperman
United States Bankruptcy Judge**